# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

DIVISION 618, AMALGAMATED TRANSIT
UNION, KEVIN COLE ET AL.,

            Plaintiffs,                          C.A. No. 18-cv-226-WES-LDA

            v.

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY,

            Defendant.

## JOINT MOTION FOR CERTIFICATION OF RULE 23 SETTLEMENT CLASS AND PRELIMINARY CERTIFICATION OF FLSA COLLECTIVE ACTION, AND FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

Plaintiffs Division 618, Amalgamated Transit Union (the "Union") and three members of its bargaining unit who are the individually-named Plaintiffs in this suit (collectively, "Plaintiffs"), individually and on behalf of all others similarly-situated, along with Defendant Rhode Island Public Transit Authority ("Defendant" or "RIPTA"), move jointly for certification of a Rule 23 settlement class and preliminary certification of Fair Labor Standards Act ("FLSA") collective action, and for preliminary approval of the parties' proposed class action settlement.

## I.     OVERVIEW

Plaintiffs, individually and on behalf of all similarly-situated RIPTA bus operators who are members of the Union's bargaining unit, brought this action under the FLSA and Rhode Island state-law wage and hour law based on the factual allegations in the Complaint that focus on RIPTA bus operators who are required to travel between RIPTA's Elmwood garage and Kennedy Plaza without compensation before and after a break, generally known as "split-shift" travel time.  The parties in this case have reached a proposed class-wide settlement, under which

RIPTA would pay each putative class member $400.00 (or a prorated portion thereof, as explained below).

The putative class is defined as full-time RIPTA bus operators that are members of the Union's bargaining unit, and who worked at any time during the period from April 24, 2015 (three years before the filing of the Complaint, *see* ECF No. 1) to the date of the proposed settlement between the parties ("Settlement Period").[1]  Under the proposed settlement, each putative class member that worked the *entire* Settlement Period will receive $400.00 from RIPTA, while those who worked during some, but not all, of the Settlement Period (because they were hired and/or retired during the Settlement Period) will receive a prorated amount based on the number of days worked.  According to RIPTA's records, there are approximately 500 putative class members who are eligible for monetary compensation under the proposed settlement.  RIPTA and the Union shall also execute an agreement, under which RIPTA shall, going forward, compensate all members of the Union's bargaining unit who are full-time, split-shift bus operators for their split-shift travel time.

The parties respectfully submit that the proposed settlement will provide fair compensation to full time RIPTA bus operators who worked at RIPTA at any time during the Settlement Period, and request that the Court preliminarily approve this settlement and allow the parties to issue notice to the putative class members.  A copy of the proposed settlement agreement is attached here as Exhibit 1.  A copy of the proposed notice to class members is attached as Exhibit 2, and a copy of the proposed claim form and release is attached as Exhibit 3. Upon approval by the Court, the notice and claim form will be sent by Plaintiffs' counsel to all

---

[1] The statute of limitations for FLSA claims is two years, or three years for a willful violation. 29 U.S.C. § 255(a). The statute of limitations for Plaintiffs' state-law wage and hour claims is three years.  R.I. Gen. Laws § 28-14-19.2(g).

eligible class members at their last known address.[2]  In addition, the parties request that the Court

schedule a final approval hearing as outlined in Section V of this motion, *infra*.

## II.    THE COMPLAINT AND HISTORY OF SETTLEMENT NEGOTIATIONS[3]

On April 24, 2018, the Union and three members of the bargaining unit, Kevin Cole,

James Thornley, and Tracey Blackledge, filed this putative class and collective action against

RIPTA.  ECF No. 1.  As alleged in the Complaint, Plaintiffs Cole, Thornley, and Blackledge are

full-time RIPTA bus operators who are assigned specific bus routes to drive each workday, and

their pay depends on their hours worked to complete their assignments.  *Id.* ¶¶ 1-9, 11.  As part

of their daily assignments, RIPTA bus operators take buses from a RIPTA garage in the morning

and return them to a RIPTA garage at the end of the workday, but because buses are in operation

for up to twenty (20) hours each day, certain RIPTA bus operators take breaks and replace each

other in active duty while the buses are on the road, usually at Kennedy Plaza but also at other

locations.  *Id.* ¶¶ 12-18.  Some RIPTA bus operators have so-called "split shift" work schedules,

whereby the operators may, for example, work from 6:00 a.m. to 10:00 a.m., and again from

2:00 p.m. to 6:00 p.m. the same day.  *Id.*  Upon completing their first split shift (in this example,

at 10:00 a.m.), bus operators travel in a RIPTA bus from Kennedy Plaza to a RIPTA garage, and

upon commencement of their second split shift (in this example, at 2:00 p.m.), they take a

RIPTA bus from the garage to Kennedy Plaza.[4]  *Id.*  Plaintiffs allege that RIPTA is required to

pay the putative class for this so-called "split shift travel time." *Id.* ¶ 16.

Under the parties' collective bargaining agreement ("CBA"), RIPTA is not required to

---

[2] Plaintiffs' counsel, working with Defendant's counsel, will conduct address search updates and will make every reasonable effort to get notice to class members who may have moved.

[3] For purposes of this motion only, RIPTA accepts as true the allegations in Plaintiffs' Complaint.

[4] Split shifts allow RIPTA to meet rush hour bus service demands.  *Id.* ¶ 16.

compensate bus operators for split shift travel time between RIPTA's Elmwood garage and Kennedy Plaza after they resume working after a break, but does provide "travel pay" to bus operators who travel to and from garages to locations other than Kennedy Plaza. *Id.* ¶¶ 17, 18. Each of the named Plaintiffs allege that they have travelled to and from RIPTA's Elmwood garage and Kennedy Plaza after a break and did not receive compensation. *Id.* Under the CBA, the parties stipulated that it takes eighteen (18) minutes to travel between RIPTA's Elmwood Garage and Kennedy Plaza. *Id.* ¶ 18.

The Complaint contains two substantive causes of action based on the allegation that the RIPTA bus operator's travel between RIPTA's Elmwood garage and Kennedy Plaza is mandatory, and that the lack of compensation for the unpaid split-shift travel time is unlawful. First, the Complaint alleges violation of the FLSA, 29 U.S.C. §§ 206, 207 arising under the Portal-to-Portal Act, 29 U.S.C. §§ 252, 254, which is part of the FLSA.[5] *Id.* ¶¶ 19-26. Second, the Complaint alleges state-law claims under the Rhode Island Hours of Employment Statute, R.I. Gen. Laws 28-11-1 *et seq.*, and the Rhode Island Minimum Wage Act, R.I. Gen. Laws § 28-12-1 *et seq. Id.* ¶¶ 23-26. The Complaint also alleges that RIPTA's conduct was willful, and Plaintiffs seek injunctive and declaratory relief, in addition to damages for unpaid split-shift travel time. *Id.* ¶¶ 33-38.

Along with the named Plaintiffs in the Complaint, the Complaint includes thirty-one (31) opt-in forms from RIPTA bus operators who have authorized Plaintiffs' counsel to "pursue my claims against [RIPTA] arising under the [FLSA], and any related law or regulation, State or Federal, concerning payment for time I worked." ECF No. 1-5. The Complaint alleges that

---

[5] The Portal-to-Portal Act is an amendment to the FLSA, and a claim under the Portal-to-Portal Act is functionally the same as a claim under the FLSA. *See Local 589, Amalgamated Transit Union v. Mass. Bay Transp. Auth.*, 94 F. Supp. 3d 47, 50-51 (D. Mass. 2015).

4

there are additional bus operators who were not compensated for split-shift travel time, and that the legal and factual issues shared by these putative class plaintiffs predominate over any differences among their individual claims.  Compl. ¶¶ 28-29.

After RIPTA received notice of the Complaint, the parties entered into settlement negotiations.  Plaintiffs' counsel and Defendant's counsel exchanged several communications and the parties agreed to meet for detailed settlement discussions.  Plaintiffs' Virginia-based counsel traveled to Rhode Island and the parties engaged in a half-day settlement negotiation. During the settlement negotiation, RIPTA's in-house counsel exchanged information on the putative class members with the Union's business agent.  At the end of the settlement negotiation, the parties agreed that, in exchange for a release, RIPTA would: (1) pay each putative class member $400.00 if they worked full-time during the entire Settlement Period, (2) pay putative class members who worked for some, but not all, of the Settlement Period (because they were hired and/or retired during that time) $400.00, prorated based on the number of days worked, (3) going forward, compensate all putative class members for the split-shift travel time and enter into an agreement to that effect, and (4) pay $25,000 in attorney's fees to Plaintiffs' counsel.  After the parties reached this agreement, they negotiated the proposed Settlement Agreement and General Release, attached hereto as Exhibit 1.  The parties have also agreed that Plaintiffs' counsel will handle notice to the class and settlement administration.

To facilitate the settlement, the parties jointly propose to the Court that Plaintiffs' counsel send each putative class member a notice, in the form attached as Exhibit 2.  After receipt, in order to receive payment, these individuals must submit an executed Claim Form and Release, in the form attached as Exhibit 3.  For individuals who send in these forms, RIPTA will receive a Release of all wage and hour claims that could have been asserted against it arising out of the

individuals' employment at RIPTA as bus operators during the applicable period.  For

individuals who do not timely file a valid and enforceable request for exclusion, their Rhode

Island state-law wage and hour claims will be barred by the settlement once it is final, whether or

not they submit a Claim Form.

### III.    THE COURT SHOULD GRANT CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS AND PRELIMINARY CERTIFICATION OF THE FLSA COLLECTIVE ACTION

The parties have stipulated, for settlement purposes only, to the following putative class

for the FLSA claim and the Rhode Island state-law wage and hour claims in the Complaint:

> Individuals that are in the Union's bargaining unit who, between April 24, 2015 and the
> date of the Settlement Agreement and General Release, were employed as full-time bus
> operators for RIPTA.

The putative class meets the standard for Rule 23 class certification and for preliminary

certification of an FLSA collective action.  Each putative class member is a bus operator who is

part of the same bargaining unit, performs the same tasks, is subject to the same split-shift travel

policy, and has not received compensation for split-shift travel time, which the parties stipulated

in the CBA takes eighteen (18) minutes.

Because the Complaint contains a FLSA collective action claim and state-law class

claims governed by Rule 23, putative class members must "opt in" to be bound by the FLSA

collective action, and must "opt out" to not be bound by disposition of the Rule 23 state-law

class claims.  29 U.S.C. § 216(b); McKnight v. Honeywell Safety Prods. USA, No. 16-132S,

2017 U.S. Dist. LEXIS 128035, at *14 (D.R.I. June 13, 2017).  This District has approved

settlements with simultaneous FLSA opt-in classes and Rule 23 opt-out classes, as have other

District Courts in the First Circuit.  Nash v. CVS Caremark Corp., No. 09-079-M, 2011 U.S.

Dist. LEXIS 145053, at *8 (D.R.I. Dec. 9, 2011); see, e.g., Roberts v. TJX Cos., Civil Action

No. 13-cv-13142-ADB, 2016 U.S. Dist. LEXIS 136987, at *11 (D. Mass. Sep. 30, 2016).  At least six Courts of Appeal – the D.C., Second, Third, Seventh, Ninth, and Eleventh Circuits – have also held that plaintiffs can bring a collective action under the FLSA concurrently with a Rule 23 class action for state-law claims.  See Calderone v. Scott, 838 F.3d 1101, 1103 (11th Cir. 2016) (collecting cases).

Here, the parties respectfully request preliminary certification of the FLSA collective action and certification of the Rule 23 class for settlement purposes only.  This District and the First Circuit have approved the use of settlement classes when named parties reach a provisional agreement that they wish to apply to the putative class.  See, e.g., Howe v. Townsend (In re Pharm. Indus. Average Wholesale Price Litig.), 588 F.3d 24, 38 (1st Cir. 2009); Cappalli v. BJ's Wholesale Club, Inc., No. 10-407 S, 2013 U.S. Dist. LEXIS 115462, at *2 (D.R.I. Aug. 15, 2013); Baptista v. Mut. of Omaha Ins. Co., 859 F. Supp. 2d 236, 237 (D.R.I. 2012); Nash v. CVS Caremark Corp., No. 09-079-M, 2011 U.S. Dist. LEXIS 145053, at *10 (D.R.I. Dec. 9, 2011).

The parties ask that certification be conditioned on the Court granting final approval of the settlement after notice to the class, consideration of objections (if any), and consideration of all other matters the Court deems relevant.  Cappalli v. BJ's Wholesale Club, Inc., No. 10-407 S, 2013 U.S. Dist. LEXIS 115462, at *4 (D.R.I. Aug. 15, 2013) (Smith, J.) (utilizing this certification procedure for settlement purposes only).  If the Court denies final approval of the settlement, the parties respectfully request that certification be withdrawn without prejudice to further motions by the parties for class certification pursuant to the FLSA or Rule 23.  Id.

### a.  The Rule 23 Settlement Class Should Be Certified

#### i.  Standard of Review For Rule 23 Settlement Classes

For certification of a Rule 23 settlement class, the proposed class must meet the

requirements of Federal Rule of Civil Procedure 23(a) and one of the three categories provided

in Rule 23(b).  Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009); see also 5

Moore's Federal Practice § 23.161.  "Rule 23(a) requires that (1) there be numerosity, (2) there

be common questions of law or fact, (3) the class representative's claims be typical of the class,

and (4) the representative's representation of the class be adequate." Fed. R. Civ. P. 23(a).

Brown v. Am. Honda (In re New Motor Vehicles Canadian Exp. Antitrust Litig.), 522 F.3d 6, 18

(1st Cir. 2008).  To meet Rule 23(b), the parties in this case request certification pursuant to Rule

23(b)(3), under which "a judge must further find that the questions of law or fact common to

class members predominate over any questions affecting only individual members

('predominance'), and that a class action is superior to other available methods for fairly and

efficiently adjudicating the controversy ('superiority')."  Id.  "When certification is sought for

purposes of settlement, the certification requirements designed to protect absentees require

heightened scrutiny because the court will not have the opportunity to modify the class, if

necessary, over the course of the litigation."  Trombley v. Bank of Am. Corp., No. 08-cv-456-

JD, 2011 U.S. Dist. LEXIS 83777, at *6 (D.R.I. July 28, 2011).

### ii.  The Proposed Class Meets All Requirements for the Certification of a Rule 23 Settlement Class

The parties' stipulated putative class for settlement purposes consist of "individuals that

are in the Union's bargaining unit who, between April 24, 2015 and the date of the Settlement

Agreement and General Release, were employed as full-time bus operators for RIPTA."   This

putative class meets each of Rule 23's requirements for class certification.

### 1.  Numerosity

The numerosity requirement is satisfied if the class is so large that joinder of all the class

members would be impracticable. Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean

impossibility, but only the difficulty or inconvenience of joining all members of the class."
Advertising Specialty Nat. Assoc. v. Federal Trade Commission, 238 F.2d 108, 119 (1st Cir.
1956).   According to RIPTA's records, the putative class consists of approximately 500 bus
operators.  500 individuals easily meets the Rule 23 requirement for numerosity.  Risinger v.
Concannon, 201 F.R.D. 16, 19 (D. Me. 2001) (500 class members satisfies numerosity); see also
Smith v. Red Robin Int'l, Inc., No. 14cv01432 JAH-BGS, 2017 U.S. Dist. LEXIS 49706, at *5
(S.D. Cal. Mar. 31, 2017) ("Plaintiffs contend the proposed class numbers more than 500
members and satisfies any standard for numerosity . . . Plaintiffs meet the numerosity
requirement.").

## 2.  Commonality

To satisfy the commonality requirement, the class claims "must depend upon a common
contention . . . [which] must be of such a nature that it is capable of classwide resolution—which
means that determination of its truth or falsity will resolve an issue that is central to the validity
of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551
(2011); So. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc., 241
F.R.D. 85, 87 (D. Mass. 2007) (characterizing commonality requirement as a "low hurdle" that
"can be met by even a single common legal or factual issue").

Here, the legal claims rise and fall on precisely the same common factual contention: that
RIPTA does not compensate its bus operators under the Union's collective bargaining agreement
for the bus operators' split shift travel time between RIPTA's Elmwood garage and Kennedy
Plaza. Compl. ¶¶ 17, 18.  All bus operators in the putative class also face a common legal issue
that is at the core of the case: whether the alleged failure to pay split-shift travel time violates the
FLSA and Rhode Island law.  Under these circumstances, the putative class meets the

commonality requirement.  O'Dell v. Nat'l Recovery Agency, No. 16-5211, 2018 U.S. Dist. LEXIS 36088, at *32 (E.D. Pa. Mar. 6, 2018) (commonality met when putative class members' claims rest on same fact and legal theories); Winslow v. Forster & Garbus, LLP, No. CV 15-2996 (AYS), 2017 U.S. Dist. LEXIS 205113, at *49 (E.D.N.Y. Dec. 13, 2017) (same); Roberts v. C.R. England, Inc., 318 F.R.D. 457, 510 (D. Utah 2017) (same).

### 3.  Typicality and Adequacy

The requirements of typicality and adequacy focus on the class representatives.  Fed. R. Civ. P. 23(a)(3) & 23(a)(4).  The claims of the class representatives must be typical of the class members' claims, meaning that the representatives' "injuries arise from the same events or course of conduct as do the injuries of the class and . . . [the representatives'] claims and those of the class are based on the same legal theory."  Trombley, No. 08-cv-456-JD, 2011 U.S. Dist. LEXIS 83777, at *8-9; see also Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009).  Here, each of the named Plaintiffs, like other RIPTA bus operators in the putative class, allege that they have travelled to and from RIPTA's Elmwood garage and Kennedy Plaza after a break and did not receive compensation.  Other RIPTA bus operators also travel regularly between the Elmwood Garage and Kennedy Plaza.  The amount of travel time is also typical of the class; according to the CBA, the trip from RIPTA's Elmwood Garage to Kennedy Plaza takes eighteen (18) minutes.  Compl. ¶ 18.

The named Plaintiffs, as class representatives, "must also be able to fairly and adequately protect the interests of the class, which requires a showing that the interests of the representative part[ies] will not conflict with the interests of any of the class members, and . . . that counsel chosen by the representative part[ies] is qualified, experienced and able to vigorously conduct the proposed litigation."  Trombley, No. 08-cv-456-JD, 2011 U.S. Dist. LEXIS 83777, at *8-9.

10

Here, the bus operators who are named Plaintiffs are aligned with the putative class members. They are *not* seeking incentive payments and their claims and proposed settlement compensation are the same as other putative class members.  Under these circumstances, the named Plaintiffs are adequate class members and the Court should appoint them as class representatives.

Similarly, Plaintiffs' counsel is qualified and experienced to litigate this action. Plaintiffs' counsel has decades of experience representing transit unions.  See, e.g., Rogers v. Amalgamated Transit Union, Local 689, 2017 U.S. Dist. LEXIS 65514, *1, 2017 WL 1628867 (D.D.C. May 1, 2017); Culbreth v. Wash. Metro. Area Transit Auth., 2009 U.S. Dist. LEXIS 111430, *1, 2009 WL 4546610 (D.D.C. Dec. 1, 2009); Moton v. Wash. Metro. Area Transit Auth., No. 96-7059, 1997 U.S. App. LEXIS 3167, at *1 (D.C. Cir. Jan. 14, 1997); Local 1235, Amalgamated Transit Union v. Metro. Transit Auth., 787 S.W.2d 911, 911 (Tenn. 1990); Local Div. 589 v. Mass., C.A. No. 79-2058-S, 1981 U.S. Dist. LEXIS 15538, at *1 (D. Mass. Oct. 30, 1981).  As longstanding union attorneys, Plaintiffs' counsel are ideally suited to zealously advocate for the interests of bargaining unit members, and to communicate with members of the Union's bargaining unit about the settlement.  Plaintiffs' counsel has also litigated another wage and hour class actions on behalf of a transit union.  Local 589, Amalgamated Transit v. MBTA, No. 13-11455-ADB (D. Mass.).  Accordingly, Plaintiffs' counsel are qualified, experienced and able to vigorously conduct the litigation, and the Court should appoint them as class counsel.

### 4.  The Requirements of Rule 23(b)

To determine whether common questions of law or fact predominate under Rule 23(b), the court generally examines the elements of the claim.  Trombley, No. 08-cv-456-JD, 2011 U.S. Dist. LEXIS 83777, at *11-12 (internal citations omitted).  The predominance element of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation." <u>Amchem Prods.</u>, 521 U.S. at 623.  The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages.  Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

Here, common questions of fact and law predominate for all putative class plaintiffs. Each putative plaintiff has the same causes of action against RIPTA based on the same facts, specifically, the non-payment of compensation for 18 minutes of split-shift travel time during the Settlement Period.  <u>Dvornikov v. Landry's Inc.</u>, Civil Action No. 15-cv-13286-ADB, 2017 U.S. Dist. LEXIS 49178, at *25 (D. Mass. Mar. 31, 2017) (predominance satisfied for "[w]age claims involving system-wide practices or policies are appropriate for class treatment because establishing liability for one employee necessarily establishes liability for the entire class."); <u>Scott v. First Am. Title Ins. Co.</u>, 2008 U.S. Dist. LEXIS 38868, at *10 (D.N.H. Apr. 28, 2008) (predominance exists when common questions predominate as to liability).

The determination of the superiority requirement of Rule 23(b)(3) entails assessment of (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).  In this case, the maintenance of a class action is superior because the putative class members are bargaining unit

members of Plaintiff's Union such that they regularly have disputed issues with management decided collectively, and the amount of liability in play is relatively small.  By definition, under state law, bargaining unit members have a community of interest.  See, e.g., Town of W. Greenwich v. R.I. Labor Rels. Bd., No. KC 10-1723, 2014 R.I. Super. LEXIS 93, at *13 n.9 (Super. Ct. July 3, 2014) (Stern, J.).  It is also significant that no putative class members have initiated suit against RIPTA based on similar grounds outside of this litigation, and it is desirable to have the claims of all 500 putative class members, who are all employees of RIPTA, decided in a single forum at the same time.  See Dvornikov v. Landry's Inc., Civil Action No. 15-cv-13286-ADB, 2017 U.S. Dist. LEXIS 49178, at *32 (D. Mass. Mar. 31, 2017) (class action is superior based on showing that "judicial economy will be served by allowing this matter to proceed as a class action" and "it is unlikely that individuals would litigate these cases alone."); Carrier v. Am. Bankers Life Assurance Co., 2008 U.S. Dist. LEXIS 8603, at *36-37 (D.N.H. Feb. 1, 2008) ("Class actions are particularly appropriate to address small claims when individual recoveries would not support separate litigation.")

For all these reasons, the Court should certify a Rule 23 settlement class, defined as "individuals that are in the Union's bargaining unit who, between April 24, 2015 and the date of the Settlement Agreement and General Release, were employed as full-time bus operators for RIPTA."

### b.  The Court Should Preliminarily Certify the FLSA Collective Action

### i.  Standard of Review for Preliminary Certification of FLSA Collective Actions

The FLSA authorizes employees to sue on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b).  District courts have discretion in FLSA collective action cases "to authorize that notice be sent in appropriate cases to putative plaintiffs informing them

of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."

McKnight v. Honeywell Safety Prods. USA, No. 16-132S, 2017 U.S. Dist. LEXIS 128035, at

*15 (D.R.I. June 13, 2017).

      Courts in the First Circuit apply a two-tier approach to certification of FLSA collective

actions.  Id.  At the first stage, a motion for conditional certification triggers a preliminary

determination whether the potential plaintiffs are "similarly situated."  Id.  The standard for this

preliminary determination "is lenient; at this stage, courts do not need to make any findings of

fact with respect to contradictory evidence presented by the parties or make any credibility

determinations with respect to the evidence presented."  Id. at *16-17.  The burden is met with

"some showing that there are other employees who are similarly situated with respect to their job

requirements and with regard to their pay provisions, on which the criteria for many FLSA

exemptions are based, who are classified as exempt pursuant to a common policy or scheme . . .

It is overall a low standard of proof."  Id.  Courts "accept and consider the unverified allegations

in the complaint, as well as sworn statements, affidavits and declarations from both the

employees and the employer."  Id. at *17.  The critical showing is that there must be "some

evidence of a common policy or practice potentially imposed on all members of the proposed

collective that potentially violates FLSA."  Id.

      At the second stage of FLSA collective action certification, "courts consider factors such

as: 1) the disparate factual and employment settings — e.g. whether plaintiffs were employed in

the same corporate department, division, and location; 2) the various defenses available to

defendant which appear to be individual to each plaintiff; and 3) fairness and procedural

considerations."  Id. at *15-16.

### ii. This Case Meets the Requirements for Preliminary Certification of an FLSA Collective Action

The prerequisites for a conditional certification of a FLSA collective action class are more lenient than those under Rule 23 of the Federal Rules of Civil Procedure. See, e.g., Poreda v. Boise Cascade, L.L.C., 532 F. Supp. 2d 234, 239 (D. Mass. 2008) (explaining that conditional certification is regularly determined under a "fairly lenient" standard which "typically results in conditional certification of the representative class") (citing to Trezvant v. Fidelity Employer Servs. Corp., 434 F. Supp. 2d 40, 43 (D. Mass. 2006)); see also Baas v. Dollar Tree Stores, Inc., No. C 07-03108 JSW2009, 2009 WL 1765759, at *5 (N.D. Cal. June 18, 2009) (recognizing that "the standard to grant conditional certification of a collective action under the FLSA is more lenient than the standard to certify a class pursuant to Rule 23," but noting that "Plaintiffs must still demonstrate that they are 'similarly situated' to the other members of the proposed collective action"); Burk v. Contemporary Home Services, Inc., No. C06-1459RSM, 2007 WL 2220279, at *3 (W.D. Wash. Aug. 1, 2007) (recognizing that the FLSA "sets a more lenient standard for conditional certification of a representative class than does Rule 23 of the Federal Rules of Civil Procedure" and noting that "[c]ollective actions are not subject to the numerosity, commonality, and typicality rules of a class action suit under Rule 23").

Since the standard for certifying a collective action class is more lenient than a Rule 23 class, it follows that meeting the Rule 23 prerequisites also meets the FLSA collective action standard. See, e.g., Alvarez v. Uno Rest. Assocs., Civil Action No. 17-24452-Civ-Scola, 2018 U.S. Dist. LEXIS 84745, at *3 (S.D. Fla. May 21, 2018); Prescott v. Prudential Ins. Co., 729 F. Supp. 2d 357, 365 n.8 (D. Me. 2010); Torres-Vallejo v. CreativExteriors, Inc., 220 F. Supp. 3d 1074, 1091 (D. Colo. 2016); cf. McKnight v. Honeywell Safety Prods. USA, No. 16-132S, 2017 U.S. Dist. LEXIS 128035, at *16-17 (D.R.I. June 13, 2017). Thus, if the Court determines that

15

Rule 23 class certification is appropriate in this case, it need not delve in the "similarly situated" test for the FLSA collective action claim in the Complaint.

To the extent the Court deems it necessary to examine whether preliminary certification of the FLSA collective action is warranted, the "key collective-action question is whether the potential members of the group have shown that they are 'similarly situated' for purposes of the FLSA." Montoya v. CRST Expedited, Inc., Civil Action No. 16-10095-PBS, 2018 U.S. Dist. LEXIS 87383, at *17-18 (D. Mass. May 24, 2018). When, as here, employees have the same job duties and are subject to the same policies for payment of travel time, courts will grant conditional collective action certification. Lichy v. Centerline Communs. LLC, Civil Action No. 15-cv-13339-ADB, 2018 U.S. Dist. LEXIS 51290, at *16 (D. Mass. Mar. 28, 2018). Likewise, shuttle drivers who perform similar tasks with similar duties have also been conditionally certified as an FLSA collective. Curtis v. Scholarship Storage, Inc., No. 2:14-cv-303-NT, 2015 U.S. Dist. LEXIS 33242, at *9 (D. Me. Mar. 18, 2015). Here, the putative class involves RIPTA bus operators who travel between RIPTA's Elmwood Parking garage and Kennedy Plaza after resuming work from a break. The CBA between the Union and the RIPTA already stipulates that the time needed to make the trip in 18 minutes. These commons facts and legal claims meet the FLSA collective action standard for preliminary certification of similarly-situated putative class members. See White v. 14051 Manchester, Inc., 301 F.R.D. 368, 378 (E.D. Mo. 2014); Morales v. Farmland Foods, Inc., No. 8:08CV504, 2009 U.S. Dist. LEXIS 68974, at *15 (D. Neb. July 21, 2009).

## IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE PARTIES' PROPOSED SETTLEMENT

### a.  The Proposed Settlement is Fair, Reasonable, and Adequate

The terms of the settlement are straightforward and may be readily understood by the

class and collective members, and easily administered going forward.  First, the parties will enter

into a contract that amends the collective bargaining agreement, by which RIPTA will pay for

travel time required during midday, otherwise unpaid work breaks, beginning immediately.

Second, all bargaining unit members who have been subject to assignments which have unpaid

midday travel time (roughly 500 individuals) will receive $400 (prorated for those who were not

employed for the full three-year period preceding the lawsuit).  Third, Plaintiffs' counsel will

receive $25,000 in attorney fees and costs.  For the following reasons, these terms are fair,

reasonable, and adequate under the circumstances of this dispute.

A proposed settlement in a class action is not binding unless it is approved by the court

following a hearing, and it must be based on findings that the settlement is fair, reasonable, and

adequate.  Fed. R. Civ. P. 23(e); Trombley, No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072, at

*9.  It is well established that courts favor settlements. See, e.g., E.E.O.C. v. Astra U.S.A., Inc.,

94 F.3d 738, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors

encouraging voluntary settlement"); Durett v. Housing Auth. of Providence, 896 F.2d 600, 604

(1st Cir. 1990) (recognizing the "clear policy in favor of encouraging settlements").  The

advantages of settlements are particularly apparent in the compromise of class actions, which are

"often complex, drawn out proceedings demanding a large share of finite judicial resources,"

Mayfield v. Barr, 985 F.2d 1090, 1092 (D.C. Cir. 1993).

The determination of whether a proposed settlement is fair, reasonable, and adequate

depends on several factors, including "the terms of the settlement, the risks of litigation, the

negotiation process, the reaction of the class to the settlement, and the course of the litigation

prior to settlement.  The approval process involves balancing the advantages and disadvantages

of the proposed settlement as against the consequences of going to trial or other possible but

17

perhaps unattainable variations on the proffered settlement." <u>Trombley</u>, No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072, at *9. "When a settlement is reached before the class is certified, the settlement agreement is subject to heightened scrutiny for fairness." <u>Id.</u> at *10.

At the preliminary approval stage, courts need not come to a final conclusion as to whether the proposed settlement is fair, reasonable, and adequate. Rather, in determining preliminary approval of a class settlement, courts determine "whether a proposed settlement is 'within the range of possible approval' and whether or not notice should be sent to class members." <u>True v. American Hondo Motor Co.</u>, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010) (quoting <u>In re Corrugated Container Antitrust Litig.</u>, 643 F.2d 195, 205 (5th Cir. 1981)); <u>see also In re Prudential Security Litig.</u>, 163 F.R.D. 345, 355 (E.D.N.Y. 2006) (same). There is a "presumption that the settlement is within the range of reasonableness" when "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." <u>In re Lupron Marketing & Sales Practices Litig.</u>, 345 F. Supp. 2d 135, 137 (D. Mass. 2004).

An examination of these factors demonstrates that the proposed settlement in this case is fair, reasonable, and adequate, and should be preliminarily approved by the Court. First, the terms of the settlement are fair. <u>Trombley</u>, 2012 U.S. Dist. LEXIS 63072, at *9. Payments to the approximately 500 putative class members will be calculated pursuant to paragraph 18 of the proposed Settlement Agreement attached hereto as <u>Exhibit 1</u>. RIPTA will pay class members who worked as full time RIPTA bus operators during the entire Settlement Period $400, and a prorated amount for those class members who worked during some, but not all, of the Settlement Period, based on the number of days worked. RIPTA will make the settlement payments to the

18

class members as back wages and therefore they will be subject to withholdings as required by state and federal law. The proposed settlement also provides for a $25,000 payment from RIPTA to Plaintiffs' counsel for attorney's fees. The parties have also agreed that Plaintiffs' counsel will be responsible for claim administration tasks such as notice and settlement administration.

Second, there are inherent risks in ongoing litigation. Trombley, 2012 U.S. Dist. LEXIS 63072, at *9. This case involves several disputes, including but not limited to whether the employees physically worked split-shifts as alleged, whether RIPTA's alleged conduct was willful under 29 U.S.C. § 255(a), whether RIPTA acted in good faith pursuant to 29 U.S.C. §§216(b), 259(a), 260, and Rhode Island state law, the statute of limitations that should apply in this case, and the formula to be used in calculating damages and the extent of the damages due. Importantly, the contested unpaid work will cease immediately, rather than after potentially months or years of litigation, and the parties will enter into an agreement amending the collective bargaining agreement to provide that RIPTA will pay for all split-shift travel time. Future disputes, if any, will be addressed through the private grievance and arbitration process, without the need to resort to expensive and resource-consuming lawsuits.

Third, the case was settled after substantial negotiations between Plaintiffs' counsel and Defendant's counsel. Trombley, 2012 U.S. Dist. LEXIS 63072, at *9; In re Lupron Marketing & Sales Practices Litig., 345 F. Supp. 2d at 137. The parties exchanged a substantial amount of information in advance of settlement negotiations, including the number of class members and RIPTA's practices for split-shift travel time, so that the parties were able to engage in fully-informed negotiations and reach a resolution that all parties agree is fair. Plaintiffs' counsel and Defendant's counsel also had several communications after the filing of the Complaint regarding

19

settlement, and the parties agreed to meet for detailed settlement discussions, resulting in Plaintiffs' Virginia-based counsel coming to Rhode Island. The parties engaged in a half-day settlement negotiation, at the end of which the parties agreed to a proposed settlement framework. Since then, the parties have negotiated and agreed to the details of the settlement, as set out in the Settlement Agreement and Release, attached hereto as Exhibit 1.

Fourth, the proponents of the settlement have regularly engaged in similar litigation. In re Lupron Marketing & Sales Practices Litig., 345 F. Supp. 2d at 137. Reduced to its essence, this suit is brought by a union on behalf of its bargaining unit members against management for alleged nonpayment of wages. As noted above, Plaintiffs' counsel has decades of experience representing transit unions. As longstanding union attorneys, Plaintiffs' counsel are aligned with the interests of the Union's bargaining unit. Similarly, defense counsel has decades of experience representing public employers in labor and employment matters, and both Plaintiffs' counsel and Defense counsel have litigated wage and hour class actions. See, e.g., Local 589, Amalgamated Transit v. MBTA, No. 13-11455-ADB (D. Mass.) (Plaintiffs' counsel); Granite Telecommunications v. Contino, No. 1482-cv-0699 (Mass. Super. Ct.) (Defense counsel); Fuller v. Syatt Franchising, Inc., No. 15-0438-M (D.R.I.) (Defense counsel's firm).

Finally, Plaintiffs' counsel believe that the Settlement Agreement is in the best interests of the putative class members in light of all known facts and circumstances, including the significant risks and delays of litigation that are presented by the defenses and potential pre-trial and appellate issues that RIPTA may assert if the case proceeds. A resolution of this litigation at this stage – rather than following protracted discovery, collective and class action briefing (including possible motions for decertification of the conditionally certified collective and class), pretrial proceedings, and potential trial – will require the otherwise-unnecessary expenditure of

this Court's and the parties' precious time and resources, and present the possibility that the putative class recovers nothing.  In addition, Plaintiffs' counsel has fully advised the named Plaintiffs of the Settlement Agreement, and they have approved of and consented to the settlement.  Resolution of this case now will provide an immediate and substantial monetary benefit for the class, an outcome that is preferable to the uncertainty inherent in continued litigation.

For all of these reasons, the terms of the proposed settlement are presumptively fair, reasonable, and adequate, and the Court should preliminary approved the proposed settlement.

### b.  The Request for Attorney's Fees is Fair and Reasonable

Importantly, the proposed settlement provides for a $25,000 payment from RIPTA to Plaintiffs' counsel for attorneys' fees and expenses – an amount that will be paid *in addition* to the settlement payments to putative class members, and will *not* be deducted from their recovery. The named Plaintiffs support this request for attorneys' fees.  Plaintiffs' counsel is representing Plaintiffs under an agreement whereby counsel bills Plaintiffs at counsel's normal and customary hourly billing rates (plus costs), and Plaintiffs agree that, if Plaintiffs do not pay for counsel's time, counsel may recover their fees and costs from RIPTA in connection with this settlement.  Notably, Plaintiffs' counsel has borne all the expenses, costs, and risks associated with litigating this case.

While it is true that the provision of a "handsome fee" for class lawyers is a warning sign that a proposed settlement may not be the result of arms-length bargaining, see Trombley, No. 08-cv-456-JD, 2012 U.S. Dist. LEXIS 63072, at *10 (internal citations omitted), here, there is no award of a "handsome fee."  A fee award of $25,000 is on the low end of the amount of fees awarded in other similar class actions, many of which receive fee awards on a straight percentage of recovery basis.  See, e.g., Davis v. Footbridge Eng'g Servs., LLC, Civil Action No. 09cv11133-NG, 2011 U.S. Dist. LEXIS 93645, at *14 (D. Mass. Aug. 22, 2011) (involving

21

$208,500 settlement amount in FLSA case, and awarding $245,101 in attorney's fees); see also

Bedasie v. Mr. Z Towing, Inc., No. 13 CV 5453 (CLP), 2017 U.S. Dist. LEXIS 194595, at *27

(E.D.N.Y. Nov. 27, 2017) (involving FLSA damages award of $119,655, and awarding

$186,938 in attorney's fees). And in light of the $200,000 total potential recovery to the class

(calculated at $400 per class member times 500 putative class members), the proposed $25,000

award of fees and costs constitutes only 12.5% of that amount, which Plaintiffs believe is fair

and reasonable under the circumstances.

       Approving the $25,000 fee award will also recognize and encourage the vital role that so-

called alternative fee arrangements play in making legal counsel available to individuals who

cannot afford hourly fees. Unlike traditional firms that receive hourly fees on a monthly basis,

plaintiffs' attorneys (like Plaintiffs' counsel here) who undertake the costs and considerable risks

of litigation (including potentially incurring significant out-of-pocket expenses for experts,

transcripts, document production, and so forth), without receiving ongoing payment for their

work. Sometimes fees and expenses are recovered; other times, despite hundreds or even

thousands of hours of work, nothing is recovered. This type of practice is viable only if

attorneys, having received nothing for their work on some cases, receive more in other cases than

they would if they charged straight hourly fees. Courts have long recognized this reality. See,

e.g., Hensley v. Eckerhart, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on

contingency, thus deferring payment of their fees until the case has ended and taking upon

themselves the risk that they will receive no payment at all, generally receive far more in

winning cases than they would if they charged an hourly rate").

       By enabling clients to obtain legal representation without having to pay straight hourly

fees, this system provides critical access to the courts for people who otherwise would not be

able to afford hiring competent counsel to represent them. That access is particularly important for the effective enforcement of public protection statutes, such as the wage laws at issue in this case.  It is well recognized that "private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations." Reiter v. Sonotone Corp., 442 U.S. 330, 344 (1979).  This reasoning applies with equal force to wage and hour claims. See Skirchak v. Dynamics Research Corp., Inc., 432 F. Supp. 2d 175, 179 (D. Mass. 2006) ("Allowing private attorneys to prosecute [wage] actions in the aggregate effectively ensures enforcement of the wage laws by motivating employers to comply or face potentially large-scale litigation, and by providing counsel with an incentive to pursue such claims"), aff'd 508 F.3d 49 (1st Cir. 2007).

In sum, a plaintiffs-side practice representing workers (who likely cannot afford to pay out-of-pocket for complex litigation) under an arrangement such as that here provides wide-ranging benefits both to the workers who may achieve an otherwise-unavailable recovery and to the enforcement of important public protection statutes. Thus, in considering the fairness and reasonableness of the proposed attorneys' fees in this case, the Court should consider the success of Plaintiffs' counsel in this case, and the nature of Plaintiffs' counsel's practice, which makes such success possible.  For these reasons, the Court should award the requested attorney's fee of $25,000 to Plaintiff's counsel.

**V.    The Proposed Notice Provides Adequate Notice to the Putative Class**

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is approved by the Court. Rule 23(e) requires that adequate notice be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether to opt-in to the FLSA collective or opt-out of the Rule 23 state class.  See,

e.g., Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518, 523 (1st Cir. 1991) (stating "the court's power to approve or reject a settlement under Rule 23(e) enables the court to ensure fairness for the class members"). Similarly, putative class members to a FLSA collective action are entitled to notice to afford them with an adequate opportunity to opt-in to the suit. 29 U.S.C. § 216(b).

Upon preliminary approval by the Court, Plaintiffs' counsel will mail the attached Notice and the Claim and Release Form (Exhibit 2 and Exhibit 3) to the last known addresses of all putative class members, which total approximately 500 according to RIPTA's records.

The parties propose that the Notice and Claim and Release Form be sent to all known and reasonably ascertainable class members based on RIPTA's records. The parties propose that Plaintiffs' counsel, acting as the claims administrator, ensure that all class members receive notice, including taking all reasonable steps to trace the addresses for individuals whose Notice or Claim and Release Form is returned by the post office as undeliverable, including tracking of all undelivered mail and performing additional address searches. Plaintiffs' counsel will then promptly re-send the Notices and Claim and Release Forms to class members for whom new addresses are found.

This notice plan is consistent with the class certification notice approved by this District in a similar FLSA "opt in"/Rule 23 "opt out" class action, Nash v. CVS Caremark Corp., No. 09-079-M, 2011 U.S. Dist. LEXIS 145053, at *10 (D.R.I. Dec. 9, 2011) (ECF No. 114-4). The parties in this case have modeled the Notice after the form that this District approved in Nash.

The Notice informs class members about the allegations in the case and the terms of the settlement. It provides clear and accurate information as to the nature and principal terms of the settlement, including the monetary and other relief the settlement will provide class members (as

well as an explanation of the method of allocating and paying out the settlement amounts to class members who submit a claim form, and of the claims process), the procedures and deadlines for opting-in to the FLSA collective action or opting-out of the Rule 23 state-law class, submitting objections, the consequences of taking or foregoing the various options available to collective and class members, and the date, time and place of the final approval/fairness hearing. As such, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.

## VI.   THE PARTIES RESPECTFULLY REQUEST A FINAL APPROVAL/FAIRNESS HEARING

Plaintiffs and Defendant request that the Court schedule a final approval hearing pursuant to the following timeline:

| Event | Timing |
| --- | --- |
| Preliminary Approval Hearing | At the Court's discretion |
| Notice Date | No more than fifty (50) days after the entry of the Preliminary Approval Order |
| Deadline for filing Objections | Twenty-one (21) days prior to the Final Approval hearing |
| Deadline for returning Requests for Exclusion | Twenty-one (21) days prior to the Final Approval hearing |
| Deadline by which Claim Forms must be postmarked | Thirty (30) days after the Final Approval Hearing |
| Final Approval/Fairness Hearing | No earlier than the time period required by 28 U.S.C. § 1715, and within at least one hundred and ten (110) days, or as soon thereafter as practicable, after the Preliminary Approval Order |

At the final approval/fairness hearing, Plaintiffs will report on the results of the notice process, including the number of putative class members who have returned an FLSA collective

25

opt-in form and/or a Rule 23 opt-out form, the status of reaching class members whose notices were returned as undeliverable, and whether any class members have objected to the settlement. Also at the hearing, Plaintiffs and RIPTA will ask the Court for final approval of the settlement so that payments may be distributed to the class. Plaintiffs' counsel and Defendant's counsel will be jointly responsible for calculating the distribution of the proceeds of the settlement fund to the class members.

## VII.    CONCLUSION

For the reasons set forth herein, the parties respectfully request that the Court (1) certify the Rule 23 state-law settlement class and preliminary certify the FLSA collective, (2) grant preliminary approval of this proposed settlement, (3) authorize Plaintiffs' counsel to issue the attached Notice and Claim and Release Form to the putative class members, and (4) set a timeline and schedule for a final approval and fairness hearing, at which time Plaintiffs and Defendant will request jointly that the Court grant final approval of the settlement.

*Signature page follows.*

26

Plaintiffs,

DIVISION 618, AMALGAMATED TRANSIT
UNION, KEVIN COLE, JAMES THORNLEY, and
TRACEY BLACKLEDGE, individually and on
behalf of all others similarly situated,

By their attorneys,

/s/ Gerard P. Cobleigh
Gerard P. Cobleigh (#0232)
Cobleigh and Giacobbe
70 Jefferson Boulevard, Suite 301
Warwick, RI 02888
Tel:  (401) 941-5900
Fax: (401) 461-4107
GCobleigh@aol.com


/s/ Douglas Taylor
Douglas Taylor, Admitted *Pro Hac Vice*
Gromfine, Taylor & Tyler, P.C.
1420 King Street, Suite 500
Alexandria, VA 22314
Tel:  (703) 683-7780
Fax: (703) 683-8616
DTaylor@lbgt.com

Defendant,

RHODE ISLAND PUBLIC TRANSIT
AUTHORITY

By its attorneys,

/s/ Joseph D. Whelan
/s/ Christopher N. Dawson
Joseph D. Whelan (#5694)
Christopher N. Dawson (#8508)
WHELAN, CORRENTE, FLANDERS, KINDER
& SIKET LLP
100 Westminster Street, Suite 710
Providence, RI 02903
Tel:  (401) 270-4500
Fax: (401) 270-3760
jwhelan@whelancorrente.com
Dated:  August 2, 2018             cdawson@whelancorrente.com

27

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on August 2, 2018, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

      /s/ Christopher N. Dawson

00032506v4.DOCX

28