UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

Case No. 18-226-WES-PAS

DIVISION 618, AMALGAMATED TRANSIT }
UNION, KEVIN COLE, et al. }

v. }

RHODE ISLAND PUBLIC TRANSIT }
AUTHORITY. }

**JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT OF RULE 23 CLASS ACTION AND FLSA COLLECTIVE ACTION**

Plaintiffs Division 618, Amalgamated Transit Union (the "Union") and three members of its bargaining unit who are the individually-named Plaintiffs in this suit (collectively, "Plaintiffs"), individually and on behalf of all others similarly-situated, along with Defendant Rhode Island Public Transit Authority ("Defendant" or "RIPTA"), move jointly for final approval of the settlement of the Rule 23 class action and Fair Labor Standards Act ("FLSA") collective action.

## I. EVENTS IN FULFILLMENT OF SETTLEMENT AGREEMENT

### A. Notice To Class Members

On October 10, 2018, the Court entered an order (ECF No. 6) granting the parties' Joint Motion for Preliminary Certification of Rule 23 Settlement Class and Preliminary Certification of FLSA Collective Action, and for Preliminary Approval of Proposed Settlement (ECF No. 8) ("Joint Motion for Preliminary Approval"). The Joint Motion for Preliminary Approval, as well

as the Court's order, set out a plan for providing putative class members with notice of the proposed settlement, the terms of the parties' proposed settlement, and the rights and implications of the putative class member's decision over whether to opt-in or opt-out of the settlement. Also on October 10, 2018, the Court gave notice (No ECF number; *see* Notice of Hearing entered 10/10/18) that a hearing on final approval of the proposed settlement would be held on Friday, January 4, 2019.

Since that time, Plaintiffs compiled a list of putative class members, taken from a list of current RIPTA bus operators along with a list of individuals who left the classification of bus operators on or after the date of April 24, 2015. Based on that list, the Plaintiff Union mailed to each RIPTA Fixed Route Operator at their most recently available address, the Notice of the Settlement approved by the Court, along with request to return to the Union Office a form opting in to participate in the class action settlement or to opt out and potentially oppose the class action settlement. A total of 421 such Notices were mailed to putative class members.

### B. Responses By Notice Recipients

A total of 315 responses were returned either by mail or by hand delivery to the office of the Union. Of the putative class members who sent a response, none opted out of the settlement and no objections in any other form were received. Lists of the recipients of the Notice are attached hereto as Exhibit A, with one sorted alphabetically (by last name) and the other sorted numerically (by employee number). The Union has available for Court inspection actual copies of each form returned to by the respondents.

## II. ARGUMENT

### A. Legal Standards

The legal standards applicable to the Court's consideration of whether to grant final approval to the proposed settlement for both the Fed. R. Civ. P. 23 class and the FLSA collective – and the reasons why final approval should be granted – are set out in the parties' Joint Motion for Preliminary Approval (which the parties incorporate herein – *see generally* ECF No. 6 at 6-25), and summarized below.

For certification of the Rule 23 settlement class, the proposed class must meet the requirements of Fed. R. Civ. P. 23(a) and one of the three categories provided in Rule 23(b). *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009); *see also* 5 *Moore's Federal Practice* § 23.161. "Rule 23(a) requires that (1) there be numerosity, (2) there be common questions of law or fact, (3) the class representative's claims be typical of the class, and (4) the representative's representation of the class be adequate." Fed. R. Civ. P. 23(a). *Brown v. Am. Honda (In re New Motor Vehicles Canadian Exp. Antitrust Litig.)*, 522 F.3d 6, 18 (1st Cir. 2008). To satisfy Rule 23(b), the parties in this case request certification pursuant to Rule 23(b)(3), under which "a judge must further find that the questions of law or fact common to class members predominate over any questions affecting only individual members ('predominance'), and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ('superiority')." *Id.* Here, the settlement class easily satisfies all of the Rule 23 requirements for the reasons explained in the Joint Motion for Preliminary Approval.[1]

---

[1] Briefly, numerosity is met as there are 421 members of the class, of which 315 returned a claim form; commonality is met because the class claims all concern RIPTA's nonpayment for bus operators' split shift travel

3

As to final approval of the settlement of the FLSA collective action certification, "courts consider factors such as: 1) the disparate factual and employment settings — e.g. whether plaintiffs were employed in the same corporate department, division, and location; 2) the various defenses available to defendant which appear to be individual to each plaintiff; and 3) fairness and procedural considerations." *McKnight v. Honeywell Safety Prods. USA*, No. 16-132S, 2017 U.S. Dist. LEXIS 128035, at *15-16 (D.R.I. June 13, 2017). Importantly, the prerequisites for a conditional certification of a FLSA collective action class are more lenient than those under Rule 23 of the Federal Rules of Civil Procedure. *See, e.g., Poreda v. Boise Cascade, L.L.C.*, 532 F. Supp. 2d 234, 239 (D. Mass. 2008) (explaining that conditional certification is regularly determined under a "fairly lenient" standard which "typically results in conditional certification of the representative class") (citation omitted); *see also Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108 JSW2009, 2009 WL 1765759, at *5 (N.D. Cal. June 18, 2009) ("the standard to grant conditional certification of a collective action under the FLSA is more lenient than the standard to certify a class pursuant to Rule 23," but noting that "Plaintiffs must still demonstrate that they are 'similarly situated' to the other members of the proposed collective action").

Since the standard for certifying a collective action class is more lenient than a Rule 23 class, it follows that meeting the Rule 23 prerequisites also meets the FLSA collective action standard. *See, e.g., Alvarez v. Uno Rest. Assocs.*, Civil Action No. 17-24452-Civ-Scola, 2018 U.S. Dist. LEXIS 84745, at *3 (S.D. Fla. May 21, 2018); Prescott v. Prudential Ins. Co., 729 F.

---

time; typicality and adequacy are met because the claims of the named plaintiff bus operators are identical to those of the class of bus operators, no incentive payments are sought (ensuring their vigorous prosecution of the claims on behalf of all class members), and Plaintiffs' counsel is qualified and experienced in class actions; typicality is met because common questions of law and fact predominate; and superiority is met because the class is a bargaining unit sharing a community of interest in the outcome, the amount at issue is relatively small (which would discourage individual suits), and judicial economy is served by litigating all class claims in a single action. (*See also* ECF No. 6 at 8-13.)

Supp. 2d 357, 365 n.8 (D. Me. 2010); *Torres-Vallejo v. CreativExteriors, Inc.*, 220 F. Supp. 3d 1074, 1091 (D. Colo. 2016); *cf. McKnight v. Honeywell Safety Prods. USA*, No. 16-132S, 2017 U.S. Dist. LEXIS 128035, at *16-17 (D.R.I. June 13, 2017). Thus, if the Court determines that Rule 23 class certification is appropriate in this case, it need not delve in the "similarly situated" test for the FLSA collective action claim in the Complaint.

To the extent the Court deems it necessary to examine whether preliminary certification of the FLSA collective action is warranted, the "key collective-action question is whether the potential members of the group have shown that they are 'similarly situated' for purposes of the FLSA." *Montoya v. CRST Expedited, Inc.*, Civil Action No. 16-10095-PBS, 2018 U.S. Dist. LEXIS 87383, at *17-18 (D. Mass. May 24, 2018). Here, the bus operator class members share the same job duties and are subject to the same policies for payment of travel time, and final certification and approval is appropriate. *Lichy v. Centerline Communs. LLC*, Civil Action No. 15-cv-13339-ADB, 2018 U.S. Dist. LEXIS 51290, at *16 (D. Mass. Mar. 28, 2018). (*See also* ECF No. 6 at 13-16).[2]

### B. Request For Final Approval Of The Settlement

With the Court-approved Notice having been sent to the putative class, and responses received, the parties request that the Court should grant final approval of the proposed settlement, as it is fair and equitable to the parties and the putative class. Under the proposed

---

[2] Likewise, shuttle drivers who perform similar tasks with similar duties have also been conditionally certified as an FLSA collective. *Curtis v. Scholarship Storage, Inc.*, No. 2:14-cv-303-NT, 2015 U.S. Dist. LEXIS 33242, at *9 (D. Me. Mar. 18, 2015). Here, the putative class involves RIPTA bus operators who travel between RIPTA's Elmwood Parking garage and Kennedy Plaza after resuming work from a break. The CBA between the Union and the RIPTA already stipulates that the time needed to make the trip in 18 minutes. These commons facts and legal claims meet the FLSA collective action standard for preliminary certification of similarly-situated putative class members. *See White v. 14051 Manchester, Inc.*, 301 F.R.D. 368, 378 (E.D. Mo. 2014); *Morales v. Farmland Foods, Inc.*, No. 8:08CV504, 2009 U.S. Dist. LEXIS 68974, at *15 (D. Neb. July 21, 2009).

5

settlement:

1. The parties have amended their collective bargaining agreement so as to assure that all unpaid, midday travel time required of fixed route operators employed by RIPTA will be paid routinely for future work. Such travel time is being paid by RIPTA now.

2. Each Operator who was employed continuously by RIPTA as a fixed route operator between the dates of April 14, 2015 and April 14, 2018 shall receive $400 in settlement of back-pay and damages claimed.

3. Each Operator who was employed by RIPTA as a fixed route operator for any portion of the period between April 14, 2015 and April 14, 2018, shall receive a proportion of $400 as calculated by their actual days of employment during that period divided by 1,095.

4. Counsel for Plaintiffs will be compensated by RIPTA in the amount of $25,000.

The settlement thus accomplishes prompt and permanent correction of the allegedly illegal pay practice, by providing payment to putative class members who are participating in the settlement, and by amending the parties' collective bargaining agreement to eliminate similar issues going forward.

A flat amount of damages is efficient. At issue are damages for assignments given to Operators to travel between Elmwood Garage and Kennedy Plaza in downtown Providence during the course of their unpaid, midday break. The standard travel time allowed is 18 minutes, established by contract. The average pay rate for fixed route Operators during the period is approximately $28 per hour and the normal work week consists of 5 days. Thus one day's violation amounts to $8.40, on average or $42 per week. However, Operator daily and weekly pay may include some offsets in the form of payments which are not required. Damages are only available for days when an individual operator actually worked, and was not ill or away for other reasons. Operators change assignments three times each year and some operators' assignments

6

include midday travel to or from Kennedy Plaza for one, two or three days per week. When an operator is absent from duty, their replacement may, or may not, also have experienced unpaid midday travel time. For these reasons, and others, calculation of actual damages would be a time-consuming and laborious process. Accordingly, the parties agree that the cost and delay associated with precise determination of damages would be best avoided by determination of a flat amount for service.

A universal, flat amount damage figure is also fair. Because of frequent route reassignments and direction of substitutes to cover for absent workers, virtually every fixed route operator worked as least some period of time on assignments with an unpaid midday break. Therefore, the differences in potential damages from one operator to another were as daunting to calculate as were the actual amounts of damages themselves. Prompt resolution of the issue, then, is premised on a flat amount, roughly $.53 per day of service for all operators, regardless of assignment, attendance or other pay variables.

### III. CONCLUSION

The parties respectfully request that the Court enter an order granting final approval to the parties' proposed settlement.

[ *Signature page follows.* ]

7

Respectfully submitted,
Plaintiffs,
DIVISION 618, AMALGAMATED TRANSIT UNION, KEVIN COLE, JAMES THORNLEY, and TRACEY BLACKLEDGE, individually and on behalf of all others similarly situated,

By their attorneys,

/s/ Gerard P. Cobleigh
Gerard P. Cobleigh (#0232)
Cobleigh and Giacobbe
70 Jefferson Boulevard, Suite 301
Warwick, RI 02888
Tel: (401) 941-5900
Fax: (401) 461-4107
GCobleigh@aol.com

/s/ Douglas Taylor
Douglas Taylor, Admitted *Pro Hac Vice*
Gromfine, Taylor & Tyler, P.C.
1420 King Street, Suite 500
Alexandria, VA 22314
Tel: (703) 683-7780
Fax: (703) 683-8616
DTaylor@lbgt.com

Defendant,
RHODE ISLAND PUBLIC TRANSIT AUTHORITY

By its attorneys,

/s/ Joseph D. Whelan
/s/ Christopher N. Dawson
Joseph D. Whelan (#5694)
Christopher N. Dawson (#8508)
WHELAN, CORRENTE, FLANDERS, KINDER & SIKET LLP
100 Westminster Street, Suite 710
Providence, RI 02903
Tel: (401) 270-4500
Fax: (401) 270-3760
jwhelan@whelancorrente.com
cdawson@whelancorrente.com

Dated: January 3, 2019

8

## CERTIFICATE OF SERVICE

    I hereby certify that on January 3, 2019, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                     /s/ Christopher N. Dawson

00035833v4.DOC